Richard B. BAER, Petitioner,

v.

James H. O'KEEFE, Respondent.

Civ. No. 9151.

Supreme Court of North Dakota.

Nov. 21, 1975.

Irvin B. Nodland, Bismarck, for petitioner.

James H. O'Keefe, District Judge, Grafton; Allen I. Olson, Atty. Gen., and Calvin N. Rolfson, Asst. Atty. Gen., Bismarck; and Robert N. Lee, State's Atty., Cavalier, for respondent; argued by Judge O'Keefe, Mr. Olson, and Mr. Lee.

ERICKSTAD, Chief Justice.

In this case Richard B. Baer, an attorney admitted to practice law in all the courts of this state and possessed of a current license to practice law in this state, seeks a supervisory writ from this court wherein he, in effect, asks this court to require the Honorable James H. O'Keefe, one of the District Judges in and for the Second Judicial District, to approve attorney fees for services which he had rendered and costs he had expended in conjunction with the defense of Donald W. Shepard who was charged with four counts of burglary in the District Court of Pembina County.

The application for the writ arises out of the fact that Mr. Baer submitted a bill for services and costs in conjunction with Shepard's defense in the amount of $1,496.34 which Judge O'Keefe approved only in the sum of $821.55.

At the hearing on the order to show cause issued by this court, Judge O'Keefe, arguing on his own behalf, asserted that the amount of fees and costs to be allowed in the case of the appointment of counsel for an indigent defendant is a matter of judicial discretion. In support of this position, he urges us to consider the text used by the National College of the State Judiciary at its summer sessions in 1975 entitled *Judicial Discretion*. He asserts that this text describes three categories of judicial discretion: (1) where the trial judge's discretion is total (which he does not favor), (2) where the trial judge's discretion is presumed correct and is sustained unless found to constitute an abuse of discretion (which he favors), and (3) where the trial judge's discretion is severely limited in which case the appellate court substitutes its judgment for the judgment of the trial court (which he does not favor).

He cites no authority supporting his preference involving attorney fees and costs allowed appointed counsel in cases involving the defense of indigents.

He refers our court to the statute which he believes to support him, namely, Section 29-07-01.1, N.D.C.C.

The pertinent part thereof reads: "Lawyers appointed to represent needy persons shall be compensated at a reasonable rate to be determined by the court."

In his letter of April 9, 1975, to Mr. Baer indicating that he could not approve the bill as submitted, Judge O'Keefe said: "I would like to accommodate you and have no doubt that were this a private retainer that the bill would be fully justified."[1]

In support of his position that fees and costs allowed counsel in the defense of indigents may be limited, Judge O'Keefe refers us to the federal guidelines contained in 18 U.S.C. § 3006A.

In approving attorney fees in the amount of $700.00, phone calls in the amount of $46.55, and attorney's mileage and expenses in the amount of $75.00, or a total bill of $821.55, Judge O'Keefe said that under the guidelines adopted by the United States District Court for North Dakota as of May 1, 1973, attorney fees in a case disposed of without trial are limited to $175.00. An examination of 18 U.S.C.A. § 3006A discloses that the Code is more liberal than the U.S. District Court Rule.

"(d) Payment for representation.—

"(1) Hourly rate.—Any attorney appointed pursuant to this section or a bar association or legal aid agency or community defender organization which has provided the appointed attorney shall, at the conclusion of the representation or any segment thereof, be compensated at a rate not exceeding $30 per hour for time expended in court or before a United States magistrate and $20 per hour for time reasonably expended out of court, or such other hourly rate, fixed by the Judicial Council of the Circuit, not to exceed the minimum hourly scale established by

---

1. Letter from James H. O'Keefe to Richard B. Baer, April 9, 1975.

I am returning to you the enclosures and must regretfully inform you that I cannot approve the bill as submitted.

I would like to accommodate you and have no doubt that were this a private retainer that the bill would be fully justified. The results that you obtained for your client were very satisfactory but I do not think this is of any consequence in a public retainer. I have examined some of my recent files and find that I approved a fee of $1,000.00 in a burglary appeal to the Supreme Court. Last year, in Pembina County, a Grand Forks lawyer of repute in criminal law had a suppression hearing before me and obtained a suppression order. An appeal was taken to the North Dakota Supreme Court by the state which resulted in affirmance of my suppression. For those appearances in Cavalier and in Bismarck with the usual office work and briefing, I approved a fee of $1,100.00.

I normally have no quarrel with attorneys fees using the hourly basis of $20.00 out of court and $30.00 in court, but I think that this must somehow be related to the nature of the proceedings. I am perhaps more conscious of these fees since serving as Chairman of the Trial Practice Committee of the Judicial Council, and our major concern at this time is the state-wide problem of attorneys fees for indigents.

We are very close to adopting the Federal guidelines. Under the Federal guidelines the maximum amounts are provided by 18 U.S.C. 3006A. In cases disposed of without trial the maximum is $175.00.* The Judicial Conference of the United States has said that the maximum fees are not intended to change the basic philosophy that the Bar of the Nation owes a responsibility to represent persons financially unable to retain counsel and that compensation provided is not intended to equate private counsel fees.

* U.S. District Court guidelines for North Dakota 5–1–73.

I also question the use of an investigator without prior court approval. I have never heard of this being done before without prior consent of the court. It is noteworthy that the consent of the court is mandatory in Federal court and a maximum fee of $300.00 is provided for the use of all services other than lawyers fees.

I do not set forth all of the above as a reprimand to you but I merely do it so you can understand my thinking. I am sure that you realize there is widespread antagonism to these charges although we as lawyers know that they must continue because of court decisions.

I am suggesting the following revised voucher which I will approve:

| | |
|---|---|
| Attorneys Fees | $700.00 |
| Phone calls | 46.55 |
| Attorneys Mileage & Expenses | 75.00 |
| TOTAL | $821.55 |

a bar association for similar services rendered in the district. Such attorney shall be reimbursed for expenses reasonably incurred, including the costs of transcripts authorized by the United States magistrate or the court.

"(2) Maximum amounts.—For representation of a defendant before the United States magistrate or the district court, or both, the compensation to be paid to an attorney or to a bar association or legal aid agency or community defender organization shall not exceed $1,000 for each attorney in a case in which one or more felonies are charged, and $400 for each attorney in a case in which only misdemeanors are charged. For representation of a defendant in an appellate court, the compensation to be paid to an attorney or to a bar association or legal aid agency or community defender organization shall not exceed $1,000 for each attorney in each court. For representation in connection with a post-trial motion made after the entry of judgment or in a probation revocation proceeding or for representation provided under subsection (g) the compensation shall not exceed $250 for each attorney in each proceeding in each court.

"(3) Waiving maximum amounts.— Payment in excess of any maximum amount provided in paragraph (2) of this subsection may be made for extended or complex representation whenever the court in which the representation was rendered, or the United States magistrate if the representation was furnished exclusively before him, certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the chief judge of the circuit.

"(4) Filing claims.—A separate claim for compensation and reimbursement shall be made to the district court for representation before the United States magistrate and the court, and to each appellate court before which the attorney represented the defendant. Each claim shall be supported by a sworn written statement specifying the time expended, services rendered, and expenses incurred while the case was pending before the United States magistrate and the court, and the compensation and reimbursement applied for or received in the same case from any other source. The court shall fix the compensation and reimbursement to be paid to the attorney or to the bar association or legal aid agency or community defender organization which provided the appointed attorney. * * *"

* * * * * *

"(e) Services other than counsel.—

"(1) Upon request.—Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

"(2) Without prior request.—Counsel appointed under this section may obtain, subject to later review, investigative, expert, or other services without prior authorization if necessary for an adequate defense. The total cost of services obtained without prior authorization may not exceed $150 and expenses reasonably incurred.

"(3) Maximum amounts.—Compensation to be paid to a person for services rendered by him to a person under this subsection, or to be paid to an organization for services rendered by an employee thereof, shall not exceed $300, exclusive of reimbursement for expenses reasonably incurred, unless payment in excess of that limit is certified by the court, or by the United States magistrate if the services were rendered in connection with

a case disposed of entirely before him, as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit.

\* \* \* \* \* \*

18 U.S.C.A. § 3006A.

Mr. Baer submitted a bill as follows:

| "out of court time | 44 hrs 25 mins = $ | 887.50 |
|---|---|---|
| in court time | 1 hr = | 30.00 |
| "misc phone calls | = | 46.55 |
| copies | = | 4.00 |
| investigator time | = | 363.00 |
| investigator mileage and expenses | | 90.29 |
| attorneys mileage and expenses (see attached voucher) | | 75.00 |
| "TOTAL DUE | | $1496.34" |

Mr. Baer submitted along with his claim voucher an itemization of the time spent on the case.[2] The itemization lacks specificity.

Counsel for Mr. Baer stresses the following: Defendant Shepard was charged with four counts of burglary; the preliminary hearing was held at which he was represented by other counsel; Shepard was then recharged and informed he was subject to the provisions of the Habitual Criminal Act, having been convicted on seventeen prior occasions of felonies; an effort was then made by the Honorable Ray Friederich, a Judge of the Second Judicial District, to find counsel for Shepard in three counties but was unable to find experienced counsel who would accept the assignment in those counties; Judge Friederich then called Mr. Baer on the telephone and asked him if he would represent Shepard; and acceptance of the assignment necessitated travel from Bismarck to the northeastern part of the state, employment of an investigator, tak-

---

**2.** Itemization of time submitted by Richard B. Baer to James H. O'Keefe.

STATE OF NORTH DAKOTA VS DONALD SHEPARD

| Date | Description | Time |
|---|---|---|
| 11–15–74 | conference with Judge Friederich re court appointment | 15 mins |
| 11–20–74 | conference with investigator | 30 mins |
| 12–04–74 | call on reduction of bail, conference with client, call to clients girl friend | 30 mins |
| 12–09–74 | call judge at office, called him at Fargo | 30 mins |
| 12–10–74 | call to sheriff, judge and states atty, reduction of bail, letter to judge and motion | 45 mins |
| 12–11–74 | motion on bail and stipulation to put over term, affidavit on bail | 30 mins |
| 12–13–74 | conference with investigator re facts | 1 hr 30 mins |
| 12–31–74 | telephone conference re bail | 20 mins |
| 02–10–75 | conference with client and investigator | 1 hr |
| | call to judge and states atty | 40 mins |
| | brief motion to suppress and dismiss | 2 hrs |
| 02–12–75 | telephone call re copy of affidavit to support search warrant, call Judge Herr review transcripts, do motions to dismiss and supress | 4 hrs 30 mins |
| 02–20–75 | brief motion to supress, research | 4 hrs |
| 02–24–75 | call bureau agent | 30 mins |
| | briefing, research and review | 3 hrs 30 mins |
| 02–18–75 | call defendant, re trial, conference with investigator, call Judge O'Keefe, call witnesses, do motions for depositions of shoe repairmen | 2 hrs 30 mins |
| 02–19–75 | conference with client re depositions prepare motions etc, call states atty re depositions and FBI reports | 2 hrs |
| 02–25–75 | conference with investigator | 30 mins |
| 02–28–75 | call for bureaus agent, on boat, read and review transcripts of deposition | 45 mins |
| 03–03–75 | call to client re date of motion | 10 mins |
| 03–06–75 | conference with client, conference with atty Higgins, defense and search warrant, call to States atty office, briefing, conference with Atty Nodland, conference with client | 2 hrs 30 mins |
| 03–06–75 | call clerk to see if files on search were filed, nothing had been filed, call to Judge Craig re transcript of 1st preliminary and review of trans. | 3 hrs |
| 03–07–75 | briefing and motions, call to Judge | 3 hrs 30 mins |
| 03–10–75 | call from states atty, put trial over call to Judge, research federal library | 3 hrs 30 mins |
| 03–11–75 | travel to Cavalier | 5 hrs |
| 03–12–75 | conference with client re crime bureaus rept | 1 hr |

MOTIONS    IN COURT    1 hr

OUT OF COURT TIME    44 hrs 25 mins

IN COURT TIME    20 mins
[Should read 1 hr to be consistent]

ing of a deposition of a witness in Grand Forks, considerable research, brief writing, and interviewing.

Shepard was charged in early 1974. The case was continued, apparently with the stipulation of previous counsel or Shepard himself, and then noticed for hearing in March of 1975 at which time the state's attorney moved for a continuance on the grounds that a witness essential to the prosecution was unavailable because he was in the armed services, which precluded him from being subpoenaed. The motion was denied. At the date scheduled for trial the state's attorney again moved for a continuance on similar grounds and again the motion was denied. On motion by Baer for dismissal, the court dismissed the case on speedy-trial grounds.

The attorney fees cover 44 hours of service out of court and one hour in court.

Counsel for Mr. Baer argues that in the reduction that Mr. Baer is asked to submit to in his fees and costs, he is subsidizing the state of North Dakota.

He asserts that what has been done in this case by Judge O'Keefe is what is done in most cases and asserts that this practice is not fair to indigent defendants or to counsel for indigent defendants. He argues that the problem results from a myth: to wit, that the bar owes a duty to represent persons charged with crime, that all lawyers assume that duty, and that the responsibility falls equally upon all members of the bar. He points out that in this case, lawyers could not be found in the area and resort had to be made to counsel as far away from the city of Cavalier in the county of Pembina as the city of Bismarck in the county of Burleigh.

He asserts that if we are to have a system that does not fall equally upon all lawyers in fact, then the fees in the defense of indigents should be commensurate with what others receive or charge. He con-

tends that payment approved by Judge O'Keefe amounts to about $16 per hour. He argues that at the going rate of $40 an hour in the Bismarck area, all of the attorneys who were first contacted by Judge Friederich and refused the appointment would have made, while Mr. Baer was doing their work, an additional $1,056.

As for the federal system, counsel asserts that it is equally unfair because "it bears no relationship to anything." He argues that an arbitrary and meaningless limit is set under the federal system which upon application to the Circuit Court of Appeals, in its discretion, without any published standard, can be exceeded.

He urges this court under its administrative power to implement another system—a public defender system. He asserts that federal decisions such as *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), require the appointment of counsel for indigent defendants and that choice exists only in the selection of the machinery to be used. He urges new machinery.

Counsel for Mr. Baer refers us to no citation of authority in support of his view that the fees allowed counsel appointed to represent indigents should be equivalent to fees charged by counsel otherwise. He submits no plan or formula.

At a meeting on June 19, 1975, the North Dakota Judicial Council adopted a five-item report made by Judge O'Keefe, as chairman of the Committee on Trial Practice of the Judicial Council, with an amendment to include a sixth item. The report as amended and adopted contemplates the following guidelines to be used in conjunction with the appointment of counsel for indigent defendants:

"1. $25 per hour either in court or out of court with no minimum charge and no maximum.

"2. If the lawyer anticipates a fee of more than $200 he should first gain approval of the judge.

"3. It is suggested that if the judge is unable to approve of a submitted bill, that he refer it to a peer review board for guidance.

"4. If multiple attorneys are necessary, they are to be compensated with the approval of the judge.

"5. Mileage and costs shall be approved but in the case of unusual costs prior approval should be obtained from the judge.

"6. Itemized vouchered expenses are required."

As these guidelines had not been adopted by our Judicial Council at the time that the services in this case were rendered and the bill submitted, the guidelines cannot be looked to as guiding us in this case.

In light of the discussion and the analysis which this case has produced, it may be that the guidelines are not as complete or as workable as they should be. They do not cover the allowance of investigative fees and costs.

It should be noted that during the last session, House Bill No. 1465 was introduced which would have provided a public defender system throughout the state of North Dakota. In addition, Senate Bill No. 2244 was introduced to establish a district attorney system. Neither of these bills became law.

Present at the oral arguments in this case was the attorney general of our state, Allen I. Olson, who said that he agreed with counsel for Mr. Baer in his analysis of how the system presently worked and in his contention that the system does not represent the best way of providing counsel for indigent defendants. Mr. Olson was of the opinion also that the system includes an uneven prosecution and for these reasons, he supports both a statewide public defender system and a district attorney system. He urges our court to consider devising a statewide public defender system should we conclude that the trial court's action in this case needs to be set aside.

Without discussing the merits of House Bill No. 1465 and Senate Bill No. 2244 in detail, we think it important to say that we believe the ideas which they contained had merit and hope that the legislature when it next convenes will reopen these subjects for consideration.

As for the instant case, taking into consideration the limits which the federal law has placed on the allowance of fees and costs and the fact that approval was not secured prior to the employment of the investigator, that almost all of the attorney's time was spent in preparation rather than in the actual trial of the case, and that the itemization of time spent in research and conferences lacked specificity, we conclude that the trial court's reduction of the fees and costs was reasonable and that the fees and costs that he permitted were reasonable. Applying the National College's category (2) we find no abuse of discretion. Accordingly, the demand for the supervisory writ is hereby denied.

We do not agree with the trial court's view that attorneys who accept assignments in the defense of indigents must expect to render services at less than the going rate charged by privately retained counsel for such services. A lawyer's fee necessarily includes overhead; accordingly, what he receives in fees does not constitute net income.

We believe that prior approval of fees and costs beyond a specified amount is essential. Unless approval is sought at that time, the trial court cannot be faulted for failing later to approve fees and costs which exceed the amount allowable without prior approval. To clarify the point at which prior approval should be obtained before expending funds for costs, we suggest that prior approval in conjunction with expending more than $200 in costs, including fees for the employment of investigators, be obtained from the trial court.

What we may do in the future if the legislature fails to recognize the seriousness of the problems described and discussed in this case, we shall not attempt to predict.

The application for a supervisory writ is denied.

SAND, PAULSON, PEDERSON and VOGEL, JJ., concur.